**Matthew John REDLINGER, III, Appellant,**

**v.**

**Jeanne Maria REDLINGER, Respondent.**

**No. ED 81222.**

Missouri Court of Appeals,
Eastern District,
Division Four.

March 25, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 10, 2003.

Application for Transfer Denied
Aug. 26, 2003.

Jeffrey T. McPherson, Cynthia A. Sciuto, St. Louis, MO, for appellant.

Joyce M. Capshaw, John E. Hilton, Clayton, MO, for respondent.

GLENN A. NORTON, Judge.

Matthew Redlinger ("husband") appeals the judgment approving a Qualified Domestic Relations Order ("QDRO") awarding half of husband's pension plan to Jeanne Redlinger ("wife"). We affirm.

## I. BACKGROUND

Husband sought dissolution of his marriage to wife. In its judgment dissolving the marriage, the court awarded each party fifty percent of the value of husband's interest in his employer's stock purchase

plan. The court also awarded each party fifty percent of the value of husband's interest in the same employer's pension plan. The judgment stated that "[e]ach party is awarded fifty percent (50%) of the value" of the husband's pension plan. The judgment went on to state that "[a] Qualified Domestic Relations Order shall be signed and entered by the Court in order to facilitate and effectuate this division." A few weeks later, wife filed a motion to enforce the dissolution judgment with respect to the division of husband's pension plan. Wife asserted that she and husband had been unable to agree on the language for the QDRO concerning the pension plan, and sought an order compelling husband to execute her proposed QDRO. The trial court found that wife's proposed QDRO was in accordance with the dissolution judgment and approved that QDRO as the judgment of the court. The QDRO divided the pension plan based on the following formula: the number of months credited to the pension plan while the couple was married were divided by the total number of months credited to the plan, multiplied by the husband's accrued monthly benefit when received, multiplied by fifty percent.

## II. DISCUSSION

■ On appeal of a dissolution, we will sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Anderson v. Anderson*, 55 S.W.3d 444, 445 (Mo.App. E.D.2001) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). We accept the evidence and inferences favorable to the trial court's decision and disregard all contrary evidence and inferences. *Chen v. Li*, 986 S.W.2d 927, 931 (Mo.App. E.D.1999). When dividing pension plans that are vested but not ma-

tured, trial courts are "authorized to apply a flexible approach to accommodate the particular facts of each case." *Kuchta v. Kuchta*, 636 S.W.2d 663, 665 (Mo. banc 1982). The trial court has broad discretion to design a plan that protects the rights and interest of the parties. *Id.* at 666.

■ In this case, the trial court used the "wait-and-see" approach to divide the pension plan. *See Lynch v. Lynch*, 665 S.W.2d 20, 23 (Mo.App. E.D.1983). The wait-and-see approach allows the wife to share in the higher retirement benefits that may be realized from the husband's continued employment, while also sharing in the risk that the pension plan may never mature. *Id.* This approach is "the now almost standard approach to division of pension benefits." *Ward v. Ward*, 34 S.W.3d 288, 292 (Mo.App. W.D.2000).

■ Husband does not assert that the trial court erred by using the wait-and-see approach. Rather, in his sole point on appeal, husband contends that the judgment required a different approach and the QDRO was not in accord with it. The judgment said "[e]ach party is awarded fifty percent (50%) of the value" of husband's pension plan. The QDRO then allocated fifty percent of the pension plan to each party using the wait-and-see approach. Husband contends that the judgment called for awarding the wife fifty percent of the *present* value of the plan. The trial court stated that the QDRO submitted by wife was "in accordance with the language and intent of the [j]udgment." There is nothing in the record to indicate that the language and intent of the judgment was to award wife fifty percent of the present value rather than using the wait-and-see approach.

If the trial court had wanted to specify a particular method of division in the judgment it could have done so. However, by

generally stating in the judgment that each party is awarded fifty percent of the value of the pension plan, the trial court is not precluded from later specifying a particular method of division in the QDRO.

 Husband also argues that wife is estopped from denying that the plain language of the dissolution judgment grants each party fifty percent of the value of the pension plan on the day the marriage was dissolved. According to husband, because wife did not appeal the division of the stock plans, she cannot say that the pension plan was not also meant to be divided based on present value. Pension plans are unique, are governed by their own set of rules and requirements regarding when they vest and mature and trial courts are to use discretion to accommodate the particular facts of each case. *See Kuchta,* 636 S.W.2d at 665. The method by which the trial court distributed fifty percent of the stock plan to each party did not have to be the same method by which fifty percent of the pension plan was distributed.

Point I is denied.

## III. CONCLUSION

The judgment is affirmed.

WILLIAM H. CRANDALL, P.J. and SHERRI B. SULLIVAN, J. concurring.