

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

STATE OF MISSOURI, )
)
    Respondent, )
)
v. ) WD86417
)
RHAMIR JAHEIM WASHINGTON, ) Opinion filed:  May 21, 2024
)
    Appellant. )

**APPEAL FROM THE CIRCUIT COURT OF
BOONE COUNTY, MISSOURI
THE HONORABLE JOSHUA C. DEVINE, JUDGE**

Division Three:  Mark D. Pfeiffer, Presiding Judge,
Lisa White Hardwick, Judge and W. Douglas Thomson, Judge

Rhamir Jaheim Washington ("Washington") appeals a judgment entered by the Circuit Court of Boone County ("trial court") in which he was found guilty of third-degree domestic assault and received a three-year sentence.  Washington raises four points on appeal.  In Points I and II, Washington claims that the trial court erred in overruling his objection to the State's filing of a second substitute information which added the allegations that Washington was a persistent assault offender and a persistent misdemeanor offender because during the cases which support the repeat offender charges he was without representation at "critical

stages." In Point III, Washington contends the trial court erred in overruling his submitted jury instructions which were applicable to jury punishment because he was eligible for jury punishment in the event of a guilty verdict. In Point IV, Washington argues the trial court erred in denying his motion to dismiss for improper preliminary hearing because the trial court lacked jurisdiction to hear the case because the "complainant" was not examined at the preliminary hearing. Finding no error, we affirm.

## Factual and Procedural History

The State initially charged Washington with the class D felony of second-degree domestic assault by felony complaint, alleging Washington recklessly caused serious physical injury to Victim, a woman with whom he had a child in common, by striking her repeatedly in the face on or about May 22, 2022. Attached to the complaint filed in the associate division of the circuit court was a probable cause statement prepared and signed by the responding police officer. Following a preliminary hearing which found there was probable cause to believe Washington had committed a felony, an information was filed charging Washington with the class D felony of domestic assault in the second degree. Victim was the sole witness for the State at the preliminary hearing. Thereafter, Washington filed a motion to dismiss for improper preliminary hearing, alleging the responding police officer, who authored the initial probable cause statement, was the "complainant." He further alleged that because the "complainant" had not testified at the preliminary hearing as required under section 544.270, RSMo 1939,

2

he was denied his right to a preliminary hearing under section 544.250, RSMo 1979 and the trial court was without jurisdiction to hear the case.[1]  The motion was taken under advisement and later denied.

The State subsequently moved for leave to file a substitute information, which alleged Washington to be a persistent assault offender under section 565.079 on the basis of two prior convictions of domestic assault in the fourth degree in 2021 and 2022.  Washington opposed the motion, arguing the State should not be permitted to use these prior convictions to enhance his sentence as he was denied counsel at critical stages in the course of both.  Washington claimed these critical stages were the review of his bond conditions at the initial appearance in the 2021 case, and the decision on whether to exercise his right to a change of judge in the 2022 case.  Arguments were heard on the motion at pretrial conference and the trial court later granted the State's motion to file the substitute information, which was then filed.

Jury trial commenced on May 17, 2023.  Prior to the start of trial, a hearing was held on Washington's offender status.  The State requested the trial court to take judicial notice of the findings of guilt of fourth-degree domestic assault in both the 2021 and 2022 cases, and based on those findings, to find that Washington is a prior and persistent assault offender.  The State also argued that the trial court could find Washington is a persistent misdemeanor offender under section

---

[1] Other than these two statutes, all statutory citations are to RSMo (2017).

558.016, in addition to a persistent assault offender, based on the same two prior convictions.

A brief recess took place to allow the State to prepare a second substitute information to include language concerning the persistent misdemeanor offender allegation. Once back on the record, the trial court acknowledged the objections Washington had lodged against the initial substitute information, and allowed Washington to make additional objections to the second substitute information at that time. The trial court overruled Washington's objections, and the second substitute information was filed. Upon recommencing the offender status hearing, Washington reasserted his objection to the State's use of the two prior convictions on the ground that he was denied counsel at critical stages in both cases. The trial court ultimately denied Washington's objection, and based on the evidence adduced, found that Washington was both a persistent assault offender under section 565.079 and a persistent misdemeanor offender under section 558.016.

Following the close of evidence at trial, an instruction conference was held, during which Washington offered instructions related to jury sentencing. The trial court denied the request to submit said instructions, having already found that Washington was ineligible for jury sentencing due to his status as a persistent assault offender and a persistent misdemeanor offender. The jury returned a verdict finding Washington guilty of the lesser-included offense of domestic assault in the third degree, a class E felony. On July 14, 2023, the trial court sentenced Washington to a three-year term of imprisonment.

Washington appeals.

## Point I and Point II[2]

In Points I and II, Washington claims the trial court erred in overruling his objection to the State's filing of the second substitute information in which he was alleged to be a persistent assault offender and a persistent misdemeanor offender, respectively, and in finding the State adduced sufficient evidence on those offender statuses. In both points Washington contends these trial court errors stem from the use of his 2021 and 2022 convictions in proving those respective offender statuses. In particular, Washington argues that he was deprived of counsel at "critical stages" in each of his previous findings of guilt, specifically the "bail or bond review hearing" in his 2021 case and "the decision whether to exercise the right to change of judge under Rule 32.06" in the 2022 case. Washington claims that at the offender status hearing, the State failed to prove that he was either represented by counsel or waived counsel at such critical stages during the 2021

---

[2] Our review of Washington's Points I and II is made difficult by Washington's briefing to this court, which has failed to comply with the requirements of Rule 84.04(c) in that his Statement of Facts only generally references the hearings where Washington claims he was unconstitutionally without counsel. "'Failure to meet the requirements set forth in Rule 84.04(c) is grounds for dismissal.'" *Brown v. Brown*, 645 S.W.3d 75, 83 (Mo. App. W.D. 2022) (quoting *Gossett v. Gossett*, 98 S.W.3d 899, 901 (Mo. App. W.D. 2003)). Nevertheless, "[w]e have the discretion to review non-compliant briefs ex gratia where the argument is readily understandable." *Ebert v. Ebert*, 627 S.W.3d 571, 585 (Mo. App. E.D. 2021) (alteration in original) (quoting *Scott v. King*, 510 S.W.3d 887, 892 (Mo. App. E.D. 2017)). Because the Respondent and this Court can understand Washington's arguments, and believe we have located the relevant portions of the 2021 and 2022 case, we choose to exercise that discretion here.

and 2022 cases. Because the two prior convictions provide the basis for both claims of error in Points I and II, we address them together.

Under section 565.079, a persistent assault offender is a person who has been found guilty of two or more assault offenses occurring within ten years of the charged assault offense. Section 565.079.1(2). If a person is found to be a persistent assault offender, and is found guilty of a class C or D felony under chapter 565, the court must enhance that person's sentence to the punishment that is two classes higher than the offense for which the person was found guilty.[3] Section 565.079.14.

Under section 558.016, a persistent misdemeanor offender "is one who has been found guilty of two or more offenses, committed at different times that are classified as A or B misdemeanors under [Missouri law]." Section 558.016.5. "The court may sentence a person who has been found guilty of an offense to a term of imprisonment as authorized by section 558.011 or to a term of imprisonment authorized by a statute governing the offense if it finds the defendant is a . . . persistent misdemeanor offender." Section 558.016.1.

---

[3] Ultimately, Washington was convicted of the lesser-included class E felony of domestic assault in the third degree. Class E felonies are not enhanced pursuant to section 565.079. However, Washington does not raise any issue concerning sentence enhancement; rather, he takes issue with sentencing having been taken away from the jury as a result of his offender status.

Though unrelated to the pending case, if found guilty of a class B felony assault, the trial court must enhance the penalty to a term of imprisonment authorized for a class A felony.

Washington argues that he does not qualify as either a persistent assault or persistent misdemeanor offender because he was unrepresented at critical stages in his two prior convictions. The "'Sixth Amendment guarantees a defendant the right to have counsel present at all critical stages of the criminal proceedings.'" *State ex rel. Mo. Pub. Def. Com'n v. Waters*, 370 S.W.3d 592, 606 (Mo. banc 2012) (quoting *Missouri v. Frye*, 566 U.S. 134, 140, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012)), *not followed as dicta on other grounds by State v. Woolery*, No. SC100170, 2024 WL 1905033, at *7 n.11, *9 n.13 (Mo. banc Apr. 30, 2024). The United States Supreme Court has provided that "critical stages" are "those pretrial procedures that would impair defense on the merits if the accused is required to proceed without counsel." *Gerstein v. Pugh*, 420 U.S. 103, 122, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (citing *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); *United States v. Wade*, 338 U.S. 218, 226-27, 87 S.Ct. 1926, 1931-32, 18 L.Ed.2d 1149 (1967)). For example, the Supreme Court held a "probable cause determination" was not a critical stage "[b]ecause of its limited function and its nonadversary character[.]" *Id.* But a "preliminary hearing," the function of which was to determine whether the evidence justified charging a suspect, was found to be a critical stage where the suspect was allowed "to confront and cross-examine prosecution witnesses" and where "[a] finding of no probable cause could mean that he would not be tried at all." *Id.* at 122-23 (discussing holding in *Coleman*).

Additionally, an arraignment can constitute a critical stage in States where "a number of defenses . . . must be pleaded at arraignment or risk being irretrievably lost." *Woolery*, 2024 WL 1905033, at *8 (citing *Frye*, 566 U.S. at 140, 132 S.Ct. 1399, which was citing *Hamilton v. Alabama*, 368 U.S. 52, 53-54, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961)). However, Missouri is not such a State, and "under Missouri law, 'arraignment is not a critical stage in a criminal proceeding and thus, absent some prejudice to the accused, the absence of counsel at the arraignment does not violate due process.'" *Id.* at *9 (quoting *State v. Barnard*, 820 S.W.2d 674, 679 (Mo. App. W.D. 1991), *abrogated on other grounds by State v. Bernard*, 849 S.W.2d 10 (Mo. banc 1993)).

Here, Washington claims as "critical stages" a bail or bond review hearing in the 2021 case, and the window of time during the 2022 case in which to request a change of judge. He argues that, as critical stages of the respective proceedings, representation was required at each, but that he was in fact without counsel at both. Due to his lack of representation at these "critical stages," Washington concludes that neither conviction can be used in proving his prior or persistent offender status, as they were obtained in violation of his constitutional right to the assistance of counsel. However, in so arguing Washington seeks to collaterally attack his 2021 and 2022 convictions. This he cannot do.

8

Missouri has long held that collateral attacks on previous convictions are limited.[4] In *State v. Craig*, 287 S.W.3d 676 (Mo. banc 2009), the defendant complained that the circuit court erred in using evidence of three prior offenses to enhance his sentence because such evidence did not "unequivocally" demonstrate his prior guilty pleas were accepted in accordance with Rules 24.02 and 37.58. *Id.* at 680. In making this claim, the defendant in *Craig*, like Washington here, was attempting to raise constitutional issues concerning his prior convictions, "contend[ing] that these exhibits cannot be used to enhance his sentence because the exhibits do not prove that his previous guilty pleas were given in a knowing and voluntary manner, as required by *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L.Ed.2d 274 (1969)." *Id.*

Reframing the issue, the Missouri Supreme Court determined that the issue the defendant raised on appeal was "not whether [his] previous guilty pleas were knowing and voluntary, but whether the State, in a subsequent prosecution, long after the prior judgments were entered, must affirmatively prove, time and again, that prior courts did not err in accepting pleas." *Id.* The Court held the State had no such duty. "[S]uch a requirement would, in most cases, preclude the State from proving that a defendant is a prior, persistent, or aggravated offender, which

---

[4] "Although collateral attacks on earlier judgments are generally prohibited in the interest of finality, 'a judgment may be subject to collateral attack if it is void because it was rendered by a court lacking jurisdiction over the parties or the subject matter.'" *D.H.C. v. Juv. Officer*, 674 S.W.3d 804, 808 (Mo. App. W.D. 2023) (quoting *Rischer v. Helzer*, 473 S.W.3d 188, 193 (Mo. App. W.D. 2015)). This includes judgments that are void on their face. *Geiler v. Liberty Ins. Corp.*, 621 S.W.3d 536, 542 (Mo. App. W.D. 2021) (citation omitted). None of these circumstances apply here.

9

clearly is not what the legislature intended." *Id.* at 681. Instead, "[i]f [the defendant] believed his prior pleas did not pass constitutional muster, the proper forum to address those insufficiencies . . . would have been a timely direct attack on the allegedly deficient plea itself." *Id.*

As described in *Craig*, the Missouri Supreme Court has previously demonstrated how the bar to collateral attack of prior guilty pleas applies in similar circumstances. In *State v. Quinn*, 594 S.W.2d 599 (Mo. banc 1980), the defendant challenged his sentence enhancement under the second offender act. There, the defendant challenged the use of his prior guilty plea for sentence enhancement purposes because the evidence offered by the State "did not show that [the defendant] had waived his right to trial by jury and all the constitutional rights connected therewith or that the plea had a factual basis." *Quinn*, 594 S.W.2d at 602. The *Quinn* Court rejected the defendant's claim on two grounds:

> First, the Court found that, on its face, an exhibit that shows a conviction was sufficient to apply the second offender act. [*Quinn*, 594 S.W.2d at 602]. Second, the Court held that *State v. Goff*, 449 S.W.2d 591, 593 (Mo. banc 1970), barred the defendant's collateral attack on his previous convictions because of his failure to take timely advantage of any remedy to set aside a judgment "for invalidities not apparent on the face of the judgment." *Id.*

*Craig*, 287 S.W.3d at 680-81; *see also Dover v. State*, 725 S.W.2d 915 (Mo. App. S.D. 1987).

Neither is such a duty incumbent upon the State here. Similar to the defendants in *Craig* and *Quinn*, Washington contests the use of his prior convictions on constitutional grounds, asserting the State failed to prove that he was either represented by counsel or waived counsel at the alleged prior

10

proceedings. But, as in *Quinn*, these alleged invalidities were neither apparent on the face of the judgments, nor did Washington timely take advantage of any remedy to set them aside "for invalidities not apparent on the face of the judgment." 594 S.W.2d at 602.

Thus, the question here is not whether the alleged hearings were "critical stages" during which Washington was owed representation, "but whether the State, in a subsequent prosecution, long after the prior judgments were entered, must affirmatively prove, time and again, that prior courts did not err in accepting pleas." *Craig*, 287 S.W.3d at 680. Washington seeks to do just that - require the State to prove the validity of convictions long after they were executed. We will not impose such a requirement upon the State. Washington cannot collaterally attack the two prior convictions for invalidities not apparent on the face of the record. If Washington believed his prior convictions did not pass constitutional muster, the appropriate time to make those objections was a direct attack on those convictions. *Id*. at 681. Applying the Supreme Court's rationale in *Craig*, we hold that the State is not required to prove the validity of prior convictions offered as evidence for sentence enhancement under section 565.079 (persistent assault offender) and section 558.016 (persistent misdemeanor offender) other than by certified record. In doing so, this Court makes no ruling on whether or not Washington was denied counsel at critical stages, because the correct question before this Court is whether the State, when seeking to enhance a sentence, is required to "prove, time and again, that a previous plea was valid." *Craig*, 287 S.W.3d at 681. Our Supreme

11

Court has clearly barred a collateral attack of this nature. Washington cannot prevail on Points I and II and they are denied.[5]

## Point III

For his third point, Washington claims the trial court erred in refusing and overruling his submission of jury instructions applicable to jury sentencing in the event he was found guilty. First, we note the jury instructions at issue obviously only apply when a *jury* is to assess and declare punishment. Missouri law is clear, however, that when a defendant is found to be a persistent assault offender or a persistent misdemeanor offender, it is the court, not the jury, that assesses punishment. Section 565.079.11; section 557.036.4(2). Here, Washington utilizes the same arguments made in Points I and II, asserting he was eligible for jury

---

[5] Even if this Court were to find Washington could collaterally attack prior judgments in contravention of the Missouri Supreme Court cases discussed above, which we do not, our Supreme Court has recently rejected arguments similar to Washington's Points I and II with regard to critical stage proceedings. *See generally Woolery*, 2024 WL 1905033 (holding arraignment and initial appearance under Rule 22.08 were not critical stages, and stating in footnote 12 that "Rule 32.09(c) provides that nothing in the rules governing . . . change of judge (Rule 32.07(a)-(b)) 'shall prohibit a judge from ordering a . . . change of judge when fundamental fairness so requires'" (quoting Rule 32.09(c))); *State v. Logan*, No. SC100325, 2024 WL 1904597 (Mo. banc Apr. 30, 2024) (following *Woolery* in holding initial appearances and arraignments are not critical stages, and rejecting argument that defendant was prejudiced by lack of counsel at his initial appearance/arraignment due to the denial of the opportunity to obtain an automatic change of judge under Rule 32.07(b) because he failed to make a specific argument "as to why his inability to file for an automatic change of judge prejudiced him"); *State v. Mills*, No. SC100303, 2024 WL 1905040 (Mo. banc Apr. 30, 2024) (following *Woolery* in holding initial appearance, during which "bail review hearing" or consideration of conditions of pretrial release occurred, was not a critical stage, and that "a proceeding during which the circuit court considers or determines conditions for pretrial release – whether it is during an initial appearance, arraignment, or a separate bail review hearing under Rule 33.05 – is not a critical stage requiring the presence of counsel"); *State v. Phillips*, No. SC100247, 2024 WL 1905029 (Mo. banc Apr. 30, 2024) (following *Woolery* in holding initial appearance is not a critical stage).

sentencing because the State failed to prove at his offender status hearing "that [he] was either represented by counsel or waived counsel in the [2021 and 2022] cases during critical stages of the prosecution . . . ." As discussed above, the trial court did not err in finding Washington to be a persistent assault offender and a persistent misdemeanor offender, his "critical stage" arguments having failed. In light of our denial of Points I and II, Point III is denied.

## Point IV

In his final point on appeal, Washington contends the trial court erred in denying his motion to dismiss for improper preliminary hearing. Specifically, he asserts "the trial court was without jurisdiction to hear this case in that the associate circuit judge failed to examine the complainant on oath in regard to the offense charged at the preliminary hearing, in violation of [sections] 544.250 [and] 544.270." Washington's basis for this argument is that pursuant to section 544.250, an information charging a person with a felony cannot be filed "until such person . . . shall first have been accorded the right of a preliminary examination[6] before some associate circuit judge. . . ." Washington claims further basis for this argument in section 544.270, which sets forth the preliminary hearing procedure, and states,

> The associate circuit judge before whom any such person shall be brought shall proceed, as soon as may be, *to examine the complainant and witnesses*

---

[6] In common legal parlance, a preliminary examination is referred to as a preliminary hearing, which is notably the term used in Missouri Supreme Court Rule 22.09 addressing the procedure for same. We will utilize the term "preliminary hearing" in this Point, except when referencing sections 544.250 and 544.270, where we will use "preliminary examination."

13

*produced in support of the prosecution*, on oath, in the presence of the prisoner, in regard to the offense charged, and other matters connected with such charge which such associate circuit judge may deem pertinent.

(Emphasis added).[7] Thus, the crux of Washington's argument is that but for a preliminary hearing in keeping with the procedure set forth in section 544.270, the circuit court has no jurisdiction to hear the case.

Washington's argument misses the mark. His claim that the trial court is "without jurisdiction" if the associate circuit judge fails to examine the complainant is simply incorrect. "The jurisdiction of a circuit court to try for felony does not derive from the adjudication of the magistrate, but comes originally from the formal accusation by indictment or information." *State v. Clark*, 546 S.W.2d 455, 462 (Mo. App. 1976) (citations omitted) (addressing defendant's claim that there was no credible evidence presented at preliminary hearing that defendant caused the victim's death by strangulation, and thus no probable cause for prosecution). Consequently, Washington's objections raised herein "would not deprive the [trial] court of jurisdiction of the principal cause and its trial; the [trial] court's jurisdiction is not derivative." *State v. Hester*, 331 S.W.2d 535, 537 (Mo.

---

[7] Washington asserts the "complainant" for purposes of section 544.270 is the responding police officer because he authored the probable cause statement, and since the police officer was not examined by the associate circuit judge, the circuit court has no jurisdiction. Washington provides no supportive case law for his argument that the police officer is the complainant, and we need not determine who the complainant is based on our determination of this Point. However, we do point out his assertion is further called into question by *State ex rel. Woods v. Dierker*, 684 S.W.3d 727, 730 n.2 (Mo. banc 2024), which addressed the conflict between section 544.270 and Rule 22.09(a), stating "Rule 22.09(a) governs to the extent there is any conflict between the statutes and the rule . . . ."

1960) (citation omitted) (addressing defendant's "claim that he was not accorded the preliminary examination contemplated by the statutes and the rules of this court" because the preliminary hearing was "a farce and there was no competent proof" by the State from which the magistrate could have found probable cause). Here, the circuit division of the circuit court had jurisdiction over Washington's case based on the information filed therein by the State; nothing further is necessary.

Further, in concluding that the absence of the complainant's testimony alone produces the drastic result of a complete failure to hold a preliminary hearing, Washington overlooks the fundamental purpose and function of the right to a preliminary hearing:

> It is simply a means to prevent abuse of power by the prosecution, while at the same time to permit arrest and detention of an accused by means of a limited inquiry into whether there is probable cause that a felony was committed and that the accused was the offender.

*Clark*, 546 S.W.2d at 462 (citations omitted). Nothing in the record before us demonstrates that this purpose and intent was not carried out. The associate circuit judge heard evidence from the assault victim in the case. Notably, and by way of comparison to the victim, the police officer who Washington asserts is the complainant and required witness did not even commence an investigation until twelve days after the assault. And, further still, Washington fails to explain how he was prejudiced by the failure to call the police officer to testify or how the officer's testimony may have affected the finding of probable cause. We find no merit in Washington's Point IV.

15

Accordingly, Washington's fourth point on appeal is denied.

## Conclusion

For the foregoing reasons, the judgment is affirmed.

_____
W. DOUGLAS THOMSON, JUDGE

All concur.